STATE EX REL. TORRES and another, Appellants, vs. KRAWCZAK, City Clerk, Respondent.

*February 9—March 5, 1935.*

594

For the appellants there was a brief by *Drought & Drought* of Milwaukee, and oral argument by *Ralph T. Drought*.

For the respondent there was a brief by *Max Raskin,* city attorney, and *Joseph L. Bednarek* and *Alfred R. Gandrey,* assistant city attorneys, and oral argument by *Mr. Raskin* and *Mr. Gandrey.*

FOWLER, J.   The relator, Torres Cafe, Inc., is a corporation operating seven restaurants in the city of Milwaukee.

It desired licenses to permit it to serve beer with meals in each of its restaurants, but not spirituous liquors, and applied to the proper licensing authority for two licenses for two of its restaurants to be issued to relator, Waldo Torres, as its agent. Its applications were denied, and it brought *mandamus* to compel issuance of the licenses. The circuit court quashed the writ, and the relators have appealed to this court from the judgment. The corporation claims the right to have licenses issued for its other restaurants to other agents. Where the word "relator" is hereinafter used it refers to the relator corporation.

The corporation bases its alleged right to licenses as prayed upon ch. 207, Laws of 1933 (hereinafter referred to as "the act" or as "ch. 207"), entitled an "Act to create subsection (10) and to amend paragraphs (a) and (c) of subsection (9) of section 66.05 of the statutes, relating to the sale of fermented malt beverages and light wines." The amended sub. (9) related to the sale of non-intoxicating beverages, and, as amended, provides for licensing places for the sale of beverages of less than one-half of one per cent of alcoholic content. Sub. (10) of sec. 1 of the act comprises a full and comprehensive plan for the licensing of places for the sale of "fermented malt beverages" and "light wines," both of which are defined as beverages containing more than one-half of one per cent alcohol by volume, and not more than three and two-tenths per cent by weight. Pars. (f) and (g) of sec. 66.05 (10) of sec. 1 of the act provide for the issuance of two classes of retailing licenses: Class "A" for the sale of beer and light wines for consumption off the premises, and "B" for their sale for consumption either on or off the premises. A Class "B" license is the one desired by the relator. The phrases "Class 'B' license" and "Class 'B' beer license," as hereinafter used, refer to such Class "B" license unless the context shows the reference to be to a liquor license. Restaurants are within the designation of establishments for which such licenses shall be issued. Par. (g) 1

above cited provides that not more than two licenses shall be issued to any one person. Par. (g) 2 provides that the fee for Class "B" licenses shall be as fixed by the local authorities, but shall not exceed $100 per year.

Milwaukee has fixed $100 as the fee for a Class "B" beer license, but has enacted an ordinance declaring that no such license shall be issued to any person unless he shall have also procured a license to sell on the premises spirituous liquors, which is provided for by another act of the legislature, ch. 13, Laws of Special Session 1933–1934, hereinafter referred to as ch. 13, which was enacted after the repeal of the Eighteenth amendment. This act enacted a new chapter of the statutes, ch. 176, entitled "Intoxicating Liquors," and legalized the sale of intoxicating beverages, which had theretofore been prohibited, while ch. 207 was enacted before repeal of the Eighteenth amendment upon the theory declared by the congress of the United States prior to its enactment that beverages with alcoholic content as stated in ch. 207 are not intoxicating. The provisions of ch. 13 are in general similar to those of ch. 207. They provide for Class "B" retail licenses for the sale of spirituous liquors for consumption on the premises. No Class "B" license for the sale of spirituous liquors can be issued to a person unless he also has a Class "B" license for the sale of beer. The fee for the license is left to the local authorities, but cannot be less than $50 or more than $500. Milwaukee has fixed the fee at $100. The giving of a bond is prescribed by the statute as prerequisite for the issuance of a Class "B" liquor license. No bond is prerequisite by ch. 207 for the issuance of a Class "B" beer license.

Two questions arise under the situation involved:

(1) Can the city of Milwaukee require as a condition of issuing a Class "B" beer license to the relator that it procure a Class "B" liquor license also, and thus be compelled to pay $200 for a Class "B" beer license and give a bond, while the

state law fixes $100 as the limit for such a license and does not require the giving of a bond?

(2) Is the relator limited to two Class "B" licenses under the provisions of sec. 66.05 (10) (g) 1 above referred to?

(1) The respondent contends that its ordinance provision that no one can have a Class "B" beer license unless he also has a Class "B" liquor license is merely a police regulation such as is authorized by par. (k) of sub. (10) of sec. 66.05, which provides that—

"Nothing in this subsection shall be construed as prohibiting or restricting any city, village or town ordinances from placing additional regulations in or upon the sale of fermented malt beverages or light wines, not in conflict with the terms and provisions of this subsection."

We are of opinion that this requirement is clearly in conflict with the provision of the state law that no more than $100 shall be required as the fee for the issuance of a Class "B" beer license. Ch. 13 is a later statute than ch. 207, and does not in any way affect ch. 207. By not repealing ch. 207 the intention of the legislature was to leave it in full force and effect. This intent is further evidenced by the provision of ch. 13, sec. 176.05 (10) (b), that no Class "B" liquor license shall be issued to any person not having a Class "B" beer license under sub. (10) of sec. 66.05, Stats. That the legislature intended to provide for the sale of beer in places separate from those for the sale of liquor is indicated by the fact that ch. 207 deals with beverages of alcoholic content such as not to be in fact intoxicating, theoretically at least. That is, Class "B" beer licenses permit the sale of non-intoxicating beverages only, while Class "B" liquor licenses permit the sale of intoxicating beverages. It surely was not contemplated that a place licensed for the sale of non-intoxicating beverages should be required to have a license for the sale of intoxicating beverages also. There is a quite widely, if not generally, accepted theory, that the evils of the sale of intoxi-

cating liquor are minimized by providing two classes of public places for the sale of beverages of alcoholic content, one for beer and wines only, and the other for spirituous liquors, the former not to be operated in connection with the latter. It was manifestly the purpose of the legislature by the enactment of ch. 13 to carry out this concept. To require a liquor license from persons having a beer license would frustrate this purpose. The full purpose of the legislature was to carry the concept stated one step further by providing that the beverages sold in places for the sale of beer and wine only should be of so limited alcoholic content as not to be intoxicating. The full purpose was to provide places for the sale of beer and light wine only, wherein neither spirituous liquors could be sold nor beer or wine of greater alcoholic content than three and two-tenths per cent.

The invalidity of the ordinance also appears from the fact that it would authorize exaction of $200 before a Class "B" beer license will issue, while the state law limits the exaction to $100. If a city may exact $200 before such a license will issue, it may exact $600. For the local authorities may fix the license fee for a Class "B" liquor license at $500. The legislature certainly did not intend when it limited the fee that might be directly exacted for a Class "B" beer license to $100 that $600 might be exacted therefor by indirection.

The respondent contends that by the general charter of the city of Milwaukee, and the home-rule amendment to the constitution, the city is granted power to enact any police regulations deemed by its legislative body necessary or proper for the good order of the city, and that the provisions for licensing the sale of liquor cannot be enforced or good order be maintained if places for the sale of beer alone be licensed, as such places become covers for the sale of liquor and afford means of evading the liquor laws. As above stated, it refers to the provision of ch. 207 respecting "local enforcement," sec. 66.05 (10) (j), Stats., empowering municipal authori-

ties to adopt reasonable regulations for enforcement in support of its contention, but it is there provided that such provisions shall not conflict with any statute. As the ordinance conflicts with the state law, it receives no support from the paragraph cited. Provisions of the general charter law are also cited as supporting the respondent's position. But the special provisions of ch. 207 must prevail over general statutory provisions. Ch. 207, also, as a later statute prevails over earlier ones relating to the same matter. Nor does the home-rule amendment afford any support. That amendment, while providing that a city by following a course outlined may exercise powers not otherwise authorized by statute, expressly restricts it to enactment of ordinances that are not such as to be of state-wide concern affecting every municipality uniformly alike. Ch. 207 enacts a policy of state-wide concern, affecting every municipality alike.

(2) The first sentence of sec. 66.05 (10) (g) 1 contained in ch. 207 contains a general provision for the issuance of a Class "B" beer license. The third sentence reads:

"Not more than two Class 'B' licenses shall be issued in the state to any one person, and in each application for a Class 'B' license the applicant shall state that he has not made application for more than one other Class 'B' license for any other location in the state."

This sentence upon its face clearly limits the issuance of Class "B" beer licenses to the relator to two, if a corporation is a person within the meaning of the sentence. A corporation is generally considered as a person within the meaning of the word "person" in the statutes. Par. (c) 2 of sec. 66.05 (10) of ch. 207 provides that a brewer may be granted a Class "B" beer license for a place in the brewery premises, and provides that in case the brewer is a corporation the license shall be issued to any one of the officers of the corporation. It therefore seems to be the intent of the statute that corporations are entitled to a Class "B" beer

license if otherwise so situated as to be entitled to them. It seems to be the intent of said par. (g) 1 that in case of corporations licenses shall be issued in the name of natural persons, for they can be issued only to "persons of good moral character." This is borne out by the later provision in the same paragraph that in case of a restaurant or other specified places the license may be taken "in the name of an officer or manager." However, in case of a corporation, the word "manager" in this connection must be taken as meaning the general manager of the corporation, as distinguished from the manager of a particular place. It is a matter of common knowledge that the purpose of limiting the number of Class "B" beer licenses to two was to prevent a brewer from establishing a chain of licensed places as was commonly done in pre-prohibition days, the management of which the brewer controlled and in which sales of beer were limited to the brewer's own product. This purpose is accomplished by the provision of par. (c) 2 of sec. 66.05 (10) for operation of a Class "B" beer license on the brewery premises; by the provision of said par. (c) 1 that no brewer "shall supply, furnish, lease, give, pay for, or take any chattel mortgage on any furniture, fixtures, fittings or equipment used in or about" any Class "B" licensed place, except one on the brewery premises; and by the provision of said par. (g) 1 limiting the number of licenses issued to any person to two, and providing that no license shall be issued to any person as "agent" except in the case of hotels, restaurants, and *bona fide* clubs and societies which have been in existence for six months prior to date of filing application for such license. Unless the number of Class "B" licenses be limited to two, brewers might evade this purpose by establishing a chain of restaurants, and other corporations and individuals for that matter might evade it by establishing such a chain.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded to the circuit court with directions to issue a peremptory writ of *mandamus* com-

manding the respondent to issue to Waldo Torres, as agent of the Torres Cafe, Inc., two Class "B" licenses for the sale of beer and light wines, as defined in ch. 207, Laws of 1933, in two of the restaurants operated by the corporation without his procuring a Class "B" liquor license for such restaurants.