**Ralph SCOTT and Henriette Scott,
Plaintiffs-Appellants,**

v.

**VILLAGE OF KEWASKUM and Village
Board of Kewaskum,
Defendants-Appellees.**

No. 84–2401.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1986.
Decided March 21, 1986.

Steven M. Epstein, Levine & Epstein, Milwaukee, Wis., for plaintiffs-appellants.

Robert J. Lauer, Kasdorf, Dall, Lewis & Swietlik, Milwaukee, Wis., for defendants-appellees.

Before CUDAHY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

In 1979 Ralph and Henriette Scott bought a building in Kewaskum, Wisconsin, that had been a tavern for more than 125 years. The Village Board of Kewaskum granted Ralph Scott a liquor license effective from June 1, 1979, until June 30, 1980. Ralph Scott ran the tavern until September 1, 1979, when he turned the establishment over to his sons Robert and Randy. On October 24, 1979, Ralph transferred his license to Randy and Randy's partner Kevin Kearns, who ran the tavern until June 1980. The tavern was taken over then by John and Diane Klanke, who leased it from the Scotts until January 1982, when the Scotts evicted them for nonpayment of rent. Still another lessee tried to take over the tavern, but the Village Board denied him a liquor license. Ralph and Henriette Scott then decided to resume control of the tavern themselves. Their plans were foiled when the Village Board denied them, too, a liquor license. They contend in this suit under 42 U.S.C. § 1983 that the denial violated their rights under the due process clause of the fourteenth amendment.

The Village Board treated the Scotts' application for a license as an initial application rather than a renewal. We think it was correct in doing this, because Ralph Scott had been without a license for more than a year. The Board gave the Scotts a hearing, at which the Scotts were free to present witnesses and to confront and cross-examine contrary witnesses. The hearing was transcribed. Testimony adverse to the Scotts came from Kewaskum's chief of police, who recounted complaints that the tavern had served minors, stayed open after hours, and produced rowdy behavior during the brief period Ralph Scott ran the business in 1979. The Village Board had held a special session in 1979 to consider complaints about the Scotts' tavern. The complaints continued after the business was put in the hands of Ralph's sons and lessees. There were many other adverse witnesses. The Scotts' principal reply was that the problems occurred while others were in charge of the tavern and that the problems were not out of the ordinary for a business of this kind. At the end of the hearing the Village Board denied the application for a license without stating reasons. The absence of a written statement of reasons is the nub of the Scotts' constitutional claim. Their initial hurdle is establishing that the Board's action deprived them of "liberty or property" within the meaning of the fourteenth amendment.

The Scotts' wish to have a license is not "property." "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). This means an entitlement that

stands or falls on the application of rules to facts. To the extent a request appeals to discretion rather than to rules, there is no property. See *Roth; cf. Hewitt v. Helms,* 459 U.S. 460, 466–68, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983); *Jago v. Van Curen,* 454 U.S. 14, 19–21, 102 S.Ct. 31, 35–36, 70 L.Ed.2d 13 (1981); *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979); *Achacoso-Sanchez v. INS,* 779 F.2d 1260, 1264 (7th Cir.1985). "[V]iewed functionally, property is what is securely and durably yours under … law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain". *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983).

Wisc.Stat. § 176.05(9) (recently republished in ch. 125), which governs the grant of liquor licenses, conditions licenses on the age, citizenship, and moral character of the applicant. For example, felons and minors may not be licensed to sell liquor. But although the statute specifies people to whom licenses must be denied, it does not say when a license must be granted. Section 176.05(1) authorizes village boards to grant liquor licenses "to such persons as they deem proper". No one has an entitlement to be "deemed proper;" no fact or set of facts creates a right to a license. The Supreme Court of Wisconsin has declined to treat § 176.05 as establishing substantive criteria and has repeatedly characterized liquor licenses as "privileges," to be doled out at the discretion of local governments. E.g., *State v. Bayne,* 100 Wis. 35, 38, 75 N.W. 403, 404 (1898); *Marquette Savings & Loan Ass'n v. Village of Twin Lakes,* 38 Wis.2d 310, 315, 156 N.W.2d 425, 427–28 (1968); *State ex rel. Ruffalo v. City of Kenosha,* 38 Wis.2d 518, 157 N.W.2d 568, 572 (1968). Because there are no substantive criteria, there is also no "property" within the meaning of the due process clause of the fourteenth amendment. *Bishop v. Wood,* 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); cf. *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985).

The next question is whether the Board's decision deprived the Scotts of "liberty." "Liberty" includes one's natural abilities and aptitudes. The Scotts do not need the government's help to sell liquor; they ask only that it not intervene. "Liberty" generally includes human abilities that do not depend on the government—freedom from restraint, the right to associate with others, the right to travel, and more important here the right "to work for a living in the common occupations of the community". *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); cf. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 103–04, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976). See also Shattuck, *The True Meaning of the Term "Liberty" in Those Clauses in the Federal and State Constitutions Which Protect "Life, Liberty, and Property,"* 4 Harv.L.Rev. 365 (1891). The due process clauses are designed to establish regular procedures for governmental intervention in private affairs, and so the claim to process is at its strongest when a person simply wishes to go about life—be it personal or economic life—without encountering the prohibition of the state. See Jurow, *Untimely Thoughts: A Reconsideration of the Origins of Due Process of Law,* 19 Am.J.Legal Hist. 265 (1975). So, for example, membership in the bar is a liberty interest. *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957). See generally Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405 (1977). If Wisconsin had passed a law saying that "No one shall open any business without a license," it is plain enough that an application for a license would put "liberty" in the balance, and that the government would be required to offer some kind of hearing. It could not make all private life depend on official whim by the expedient of saying that each village board shall grant licenses "as it sees fit" or some equivalent, and using that discretion to say that there was no need for a hearing.

Perhaps, however, the operation of a tavern is not one of the "common occupations of the community." The sale of liquor, like

341

the sale of guns, has been subjected to special controls for a long time, and these controls may reduce the private interest at stake. See *Baer v. City of Wauwatosa*, 716 F.2d 1117 (7th Cir.1983) (guns); *Reed v. Village of Shorewood, supra* (liquor). The twenty-first amendment gives states special powers over the sale of liquor, powers that have been held to diminish even rights granted by the first amendment and hence the fourteenth. *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). A transaction that the state may outlaw—as it may ban the operation of taverns—is not a "common occupation." Once the law reverses the presumption of free entry, it diminishes or extinguishes the "liberty" interest each person has in pursuing that occupation. What remains is the "property" interest, if any, established by the substantive criteria of the statute. Then, too, the government may interdict particular activities more readily than it may affect the class of activities. So it is permissible to deny a license to sell liquor in a particular village at a particular time, as long as this does not imply a general disqualification from the occupation. See *Perry v. FBI*, 781 F.2d 1294, 1299–1300, 1302–04 (7th Cir.1986) (en banc). Cf. *Leis v. Flynt, supra*.

■ By regulating an occupation it is empowered to extinguish, Wisconsin removed "liberty" interests in operating a tavern. Because the decision to deny a license deprived the Scotts of neither "liberty" nor "property," the village board did not need to give an evidentiary hearing and state reasons. Even if we are wrong in this, however, any residual liberty interest is weaker than the interest in pursuing a "common occupation" of the community. A person turned away from being a barkeep may do many other things. The liquor industry is not such a large part of Wisconsin's economy that the foreclosure of this segment seriously diminishes employment opportunities. The denial of the license does not even diminish significantly the Scotts' economic interest in the tavern.

They may sell the building, and the pool of buyers may be large enough to ensure that they receive a competitive price; or they may convert the building to another use. Their interest in operating the tavern themselves is correspondingly less important.

So if there is a liberty interest the question becomes: May the government deny a liquor license without stating reasons on the record? The Supreme Court has held that a statement of reasons may be required by the due process clause when the liberty or property interest is important. E.g., *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970) (revocation of welfare benefits); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (revocation of a prisoner's "good time credits"). Yet because the due process clause does not establish a uniform code of procedure for governmental action, a requirement of reasons in these cases may not control in others. Reasons facilitate review of the substance of the decision, when review may be had; the need to supply reasons also induces decisionmakers to be more thoughtful. But the formality of the process varies with the importance of the interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Sometimes even very important decisions may be made without reasons—for example, the decision to send someone to jail as opposed to granting probation, or the decision to deny release on parole. *Greenholtz v. Inmates*, 442 U.S. 1, 14–16, 99 S.Ct. 2100, 2107–08, 60 L.Ed.2d 668 (1979).

The more discretionary and less important the decision, the less the need for reasons. Greater discretion implies less substantive review and so less need for things that facilitate review. Lesser importance implies lower costs of error and so the lack of need to use error-prevention devices. The grant of a liquor license is highly discretionary and, because it does not diminish other opportunities, not very important. It is therefore unnecessary to state reasons. In any event it is unnecessary where, as here, reasons may be fairly

inferred from the transcript of the hearing. This is not a case of secret evidence and decision. See *Hameetman v. City of Chicago*, 776 F.2d 636, 645 (7th Cir.1985).

. Some final matters. The Scotts argue that the Supreme Court has already held that reasons are necessary for the denial of liquor licenses. Both the opening and the reply briefs contain this quotation from *City of Kenosha v. Bruno*, 412 U.S. 507, 509, 93 S.Ct. 2222, 2224, 37 L.Ed.2d 109 (1973):

> The [Wisconsin] statutory scheme has been interpreted by the Wisconsin Supreme Court to require a "legislative type of hearing wherein one is given notice of the hearing and a fair opportunity to state his position on the issue," ... Such applications may not be rejected "without a statement on the clerk's minutes as to the reasons for such rejection," ...

Counsel for the Scotts stated at oral argument that the Supreme Court of the United States had "held" that reasons are necessary. There are two problems, which counsel tried to solve with ellipses. The first ellipsis omits the words "in situations where municipalities have denied an application for renewal of a license." Ralph Scott gave up his license voluntarily in October 1979; the Scotts' application for a new license in January 1982 was not an application for a "renewal." The second ellipsis omits the words "Wis.Stat.Ann. § 176.05(8) (Supp.1973)". The Supreme Court was describing the statutory scheme of Wisconsin, not holding as a matter of constitutional law that reasons are necessary. Counsel should not use omissions in an effort to prove a point—it won't work, and it will make the rest of counsel's presentation incredible.

Even if § 176.05(8) applied here, this would not assist the Scotts. A state's failure to follow its own procedures does not violate the due process clause. *Olim v. Wakinekona*, 461 U.S. 238 (1983). The Scotts' final request—for a hearing in federal court at which the state must justify the denial of a license—fares no better.

This is a request for substantive review of an administrative matter. Even if the state must advance "good" reasons for its actions, a question that remains open after *Regents of the University of Michigan v. Ewing*, —— U.S. ——, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985), a federal court will do no more than examine the record of the state's proceeding. It will not retry the facts. And "good" reasons means reasons that satisfy the minimal "rationality" test for official conduct. See *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986) (en banc) (decisions such as zoning variances denied after hearings will be sustained if any set of facts may be supposed that will make the decisions rational). The Village Board may have concluded that the Scotts, having experienced problems with their tavern in the past (both when Ralph was the licensee and when they were landlords only), would experience more problems in the future. That is a rational basis on which to deny a liquor license.

AFFIRMED.