**Christopher Jay BROWN and Ruth Anne Brown, Plaintiffs–Appellants,**

v.

**CITY OF LAKE GENEVA and Audrey Milliette, Defendants–Appellees.**

**No. 89–3610.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1990.

Decided Dec. 13, 1990.

---

Robert N. Meyeroff, Milwaukee, Wis., for plaintiffs-appellants.

Charles H. Bohl, Frisch & Dudek, Milwaukee, Wis., for defendants-appellees.

Before CUDAHY, POSNER and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

The State of Wisconsin provides municipalities the opportunity to supplement their allotment of liquor licenses if certain museum-restaurants within their borders apply. Christopher and Ruth Brown applied to the City of Lake Geneva for just such a liquor license. The Browns owned a bed and breakfast in Lake Geneva, replete with a restaurant and sufficient artwork to be called a "living museum" by its owners. Unfortunately, one of their competitors belonged to Lake Geneva's Common Council, the body responsible for the grant or denial of liquor licenses. The council passed an ordinance clarifying and supplementing the statutory requirements for this license, thereby causing the Browns to withdraw their application. They then sued Lake Geneva and the interested council member for constitutional and state law violations. The district court dismissed the complaint and we affirm.

## I.

On appeal, we must "accept as true all material allegations in the complaint, and construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Section 125.51(4)(m) of the Wisconsin statutes provides that a municipality may issue "Class B" liquor licenses to restaurants within a museum containing permanent, public exhibition space at least three times the area of the restaurant, so long as the museum building was built before the State of Wisconsin was eight years old.[1] Prior to the Browns, no restaurant had ever applied to Lake Geneva for a license under this statute.

---

1. Wis.Stat. section 125.51(4)(m) (1985) reads as follows:

 Notwithstanding the quota of a municipality, its governing body may, by a three fourths vote of its members, issue a license to any restaurant with a museum having a permanent exhibition space open to the public at least three times the area of the restaurant if the building housing the museum was built during the first eight years of statehood or earlier.

 During oral argument, both counsel conceded that some unusual special interest might have lain behind the statute.

The Browns own a mansion in Lake Geneva which they have converted to a bed and breakfast inn, complete with a restaurant already possessing a beer and wine license. The building was constructed in 1856, during the first eight years after Wisconsin's admission to statehood in 1848. They have furnished the inn with a generous supply of artwork, both in its guest rooms and hallways; as such, the Browns refer to their inn as a "living museum." The Browns contend, and we must accept as true, that given dictionary definitions of the words in section 125.51(4)(m), their inn would qualify for a liquor license should Lake Geneva choose to issue one. Another Lake Geneva bed and breakfast is owned by Audrey Milliette, incidentally a member of the Lake Geneva Common Council.

In July 1988 the Browns applied for a section 125.51(4)(m) liquor license. After the application won approval from the City Plan Commission, it went before the City Council. While the council withheld action on the license, Milliette, chair of the license and judicial committee, drafted Ordinance 630 "for the orderly and efficient determination of the eligibility of applicants for [section 125.51(4)(m) ] licenses." [2] The ordinance defined the area to be considered restaurant or museum space, and prescribed the hours such museum-restaurants

were permitted to keep.[3] Not surprisingly, upon passage of this ordinance, the Browns withdrew their application, conceding that under Ordinance 630's definitions their inn could not qualify for a section 125.51(4)(m) license.

The Browns then filed an action in federal district court under 42 U.S.C. section 1983, claiming that the ordinance violated their constitutional rights to equal protection and due process under the fourteenth amendment. In a pendent claim, they asserted that Ordinance 630 violated Wisconsin law. Defendants filed a motion to dismiss, which was granted.

## II.

In order to state a claim under 42 U.S.C. section 1983, plaintiffs must show (1) action taken under color of state law, bringing about (2) a deprivation of a right protected by the Constitution. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). There is no question here that plaintiffs have alleged action taken under color of state law. However, they must further allege deprivation of a constitutional right. The Browns assert that the new legislation

---

**2.** Milliette was a defendant in this lawsuit. However the trial judge found that she had legislative immunity, and this determination has not been appealed.

**3.** Lake Geneva Ordinance 630 states:

1. *Restaurant,* is defined as follows:
A. Area shall be computed on a total square footage of the floor space including the following:
 1. Dining Room.
 2. Kitchen.
 3. Pantry and/or storage.
 4. Restrooms.
 5. Service station areas.
 6. Hallways, corridors necessary for restaurant service or business.
B. The restaurant shall be open for the service of regular meals, excluding snacks, during all hours of operation of the intoxicating liquor and fermented malt beverage license.
2. *Museum* is defined as follows:
A. The area shall be determined on a total square footage of floor space three times that of the defined restaurant area.

B. Museum area shall not include any areas defined in the total square footage of the restaurant area.
C. Museum area shall be a place for the exhibition of objects of interest from history, the arts or science. Said museum exhibits shall constitute a majority of the items placed in each room or area and shall be of a permanent nature.
D. No displayed items in the museum area shall be for sale or display a price tag.
E. No museum area shall include multipurpose rooms other than open sitting areas.
F. All museum area (sic) shall be open to the public during all hours of operation of the intoxicating liquor and fermented malt beverage license.
G. All museum areas shall be open to the public at all times the restaurant is open.
H. No food shall be served at any time in any area defined as museum area.
I. A reasonable fee may be charged for admission to the museum, but said admission fee may not be in excess of the usual and customary museum admission fees charged within the State of Wisconsin.

violated their rights to equal protection and due process.

### A. Equal Protection

 Where neither an invidious classification nor a deprivation of a fundamental interest is alleged, the equal protection clause requires only that the classification bear some rational relationship to legitimate governmental ends. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985). Here, plaintiffs cannot allege any of the classifications that traditionally receive some heightened level of scrutiny. *Id.* at 440–41, 105 S.Ct. at 3254–55 (listing those classifications receiving heightened scrutiny to include race, alienage, national origin, gender and illegitimacy). Nor have the Browns presented an argument as to why this classification should receive closer scrutiny. Moreover, a liquor license does not rise to the level of a fundamental right, such that its denial is protected by equal protection principles. *Cf. New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (discriminatory vending license scheme does not implicate any fundamental right). We therefore inquire only whether the legislation pursues a legitimate end by rational means.

 Plaintiffs intimate in their brief that we must strike the ordinance if its provisions fail to further the ends of section 125.51(4)(m).[4] We do not believe the equal protection clause requires an ordinance's purpose to be consonant with that of a corresponding state statute; rather, it need only have its own legitimate ends which are furthered by its means. Additionally, we note that, while some bias or conflict of interest may have shaped this legislation, the motives of legislators are irrelevant to rational basis scrutiny. Instead, we must accept any justification the legislature offers for its action. *See, e.g., Dukes,* 427 U.S. at 304, 96 S.Ct. at 2517

(accepting without question the city's proffered justification for its ordinance).

 We first examine whether the ends sought by the legislation are legitimate. *Zobel v. Williams,* 457 U.S. 55, 63, 102 S.Ct. 2309, 2314, 72 L.Ed.2d 672 (1982). The defendant offers several purposes in defense of its ordinance: the legislation helps clarify section 125.51(4)(m) for ease of application, makes the licenses available only to "actual museums," precludes museums from changing existing restaurants into outright drinking establishments and limits the restaurant to the service of the museum only. While these purposes may not all be of great importance to Lake Geneva's health and welfare, we cannot say that they are illegitimate. Certainty in applying a law is a reasonable legislative goal. Likewise, Lake Geneva might legitimately limit the use of supplemental liquor licenses to more traditional museums, based on a belief that it was only these institutions that the state intended to subsidize. The city might not have wanted established cultural centers to operate a free-standing bar, due to the impression such juxtaposed operation would make. Finally, the Common Council's apparent goal that the benefit of any supplemental watering holes go only to visitors to the museum is not meritless.

The ends being legitimate, we turn now to the rationality of the means. *City of Cleburne,* 473 U.S. at 448–50, 105 S.Ct. at 3258–59. Sections 1A, 2A and 2B—relating to the definition of "restaurant" and "museum"—are clearly justifiable under the rationale of clarifying the application of section 125.51(4)(m). In prescribing a ratio of restaurant area to museum area, the state statute employs the terms "museum" and "restaurant," words which are by no means self-defining. Sections 2C, 2D, 2E, 2H and 2I of the ordinance further the legitimate end of limiting any section 125.51(4)(m) licenses to bona fide and traditional museum spaces. A municipality might

---

4. For example, at page 12 of their brief, plaintiffs charge that aspects of the ordinance limit the revenue that a section 125.51(4)(m) license would provide. We infer from this argument

plaintiffs' (plausible) belief that the Wisconsin law was intended indirectly to help museums raise extra revenue.

certainly limit its view of "museum" to institutions adhering to certain content, display and admission policies.

Section 1B would limit the operation of any section 125.51(4)(m) license to hours when the kitchen is open; this restriction rationally furthers the goal of precluding the museum from operating essentially unrelated, free-standing taverns. Finally, sections 2F and 2G purport to limit the class of persons imbibing under the liquor license to museum patrons only. While these latter sections are somewhat more troubling,[5] we decline the invitation to deem such measures irrational.

## B. Due Process

 Plaintiffs have asserted that Ordinance 630 violates their right to procedural due process under the fourteenth amendment. It is well established that the threshold requirement for any successful due process claim is the deprivation of a liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). First, it is clear the Browns have no property interest in receiving a liquor license. This court squarely held in *Scott v. Village of Kewaskum*, 786 F.2d 338, 339–40 (7th Cir.1986), that denial of an initial Wisconsin liquor license does not amount to a deprivation of property.[6]

While the question whether a liberty interest is implicated in this license denial may be an open one in this circuit, *see Scott*, 786 F.2d at 340–42; *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir.1989), we deem it unnecessary to reach this question on the facts before us. Even were there a liberty interest here, the procedures provided by this legislative scheme are sufficient. In *Scott*, the plaintiffs protested because they were not given a written statement of reasons for the denial of their license, 786 F.2d at 339, yet we found process there sufficient considering the interest at stake. Plaintiffs here concede in their brief that under relevant state law, they would be entitled to a notice of refusal together with the reasons for the decision. Appellants' Br. at 17. Nothing in the contested ordinance indicates any change in this procedure. Moreover, by withdrawing their application, the Browns cannot argue inadequacies in the procedure they received. Thus we find that the written notice and explanation, coupled with the right of judicial review supplied by Wisconsin law (Appellants' Br. at 17), comply with our notion of the process due to an initial liquor license applicant.

## C. State Law Claims

 Lacking a constitutional foothold for their claims, Plaintiffs turn to state law, alleging that Ordinance 630 violates

---

**5.** Two complications arise with respect to sections 2F and 2G. First, while limiting the hours of operation of restaurant-bars, these sections do not restrict patrons of such establishments to museum-goers only. Second, these sections operate only on restaurants acquiring section 125.51(4)(m) licenses, leaving museum-restaurants without such a license free to stay open for non-museum clientele.

As to the first objection, it is by now clear that under rational basis scrutiny a legislature may attack a problem one step at a time; it need not pursue the *most* comprehensive approach to the presented goal, only one that rationally furthers that goal. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (underinclusiveness not fatal in rational basis review). A measure to keep section 125.51(4)(m) restaurants open only so long as their museums are open takes one step in reducing non-patron traffic. With respect to the second issue, we note that it is plausible for Lake Geneva's council to understand the benefit

of a section 125.51(4)(m) license to extend not only to the museum—in the form of added income from the liquor sales—but also to thirsty culture-seekers who deserve to satisfy both needs under the same roof. Therefore, Lake Geneva could rationally wish to limit the hours of only these new restaurant-bars, so as to avoid spreading the benefit of section 125.51(4)(m) (or its more negative potentials) to less cultivated patrons.

**6.** To the extent that *Scott* is distinguishable, we find its facts more supportive of a property interest than those at bar (no pun intended). The plaintiffs in *Scott* were counting on the liquor license as their sole source of income, not merely to supplement current income. The license in *Scott* was apparently to come from the village's standard allocation of liquor licenses. Here, the license was supplemental; Lake Geneva need never have issued a section 125.51(4)(m) license.

Wisconsin statutes. They cite *Wisconsin's Environmental Decade, Inc. v. Department of Natural Resources*, 85 Wis.2d 518, 534–35, 271 N.W.2d 69, 76 (1978), for the rule that a municipality may enact legislation so long as it does not infringe on the spirit of state law or the policy of the state.[7] *Environmental Decade* is a far different case. There the City of Madison prevented the use of herbicides in Madison lakes, despite a clear statutory allocation of supervisory authority over "chemical treatment of waters" to the Department of Natural Resources.

While Madison's policy concerning herbicides clearly infringed on the authority of the state agency, Lake Geneva's attempt to clarify and refine the requirements of a supplemental liquor license does not contradict any express dictate of the state legislature.[8] Moreover, we find no implied purpose underlying section 125.51(4)(m) which Ordinance 630 would defeat. We do not necessarily accept the contention that the dominant purpose of section 125.51(4)(m) was to "allow[ ] a large, old and historic building such as owned by the Plaintiffs, to qualify for a liquor license so as to provide extra income for that building." Appellants' Br. at 18. Further, the statute is not mandatory; it does not *require* the issuance of any supplemental licenses at all. We therefore deem the gloss Ordinance 630 puts on the statute to be just that; the ordinance does not conflict with the "spir-

it" of Wisconsin law. For this reason, plaintiffs' other state law contentions similarly fail.

## III.

We understand the Browns' concern; nevertheless they come to us with a problem suitable only for political solution. Their claims for constitutional and state law remedies being unfounded, the district court's dismissal is

AFFIRMED

---

7. Like plaintiffs here, the *Environmental Decade* court cited section 62.11(5) as the source of municipal power. Wis.Stat. section 62.11(5) (1989) states:

 POWERS. Except as elsewhere provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

 However, the Wisconsin court drew from this statute the conclusion that "'cities possess all powers not denied them by the statutes or the

constitution.'" *Environmental Decade*, 85 Wis.2d at 533, 271 N.W.2d at 75. We are puzzled that plaintiffs find solace in such a decision. We read it to preclude their contention that the ordinance is invalid because it allegedly does not further the health, safety or welfare of Lake Geneva.

8. Plaintiffs' reliance on *State ex rel. Torres v. Krawczak*, 217 Wis. 593, 259 N.W. 607 (1935) is also misplaced. There the Wisconsin court struck down a city ordinance which required the applicant for a $100 beer license also to purchase a $100 liquor license and execute a bond. The court invalidated the measure due to an express state law requirement that a city charge no more than $100 for its beer licenses. We find it telling that the court never mentioned the bond requirement as a reason for invalidation; apparently that added municipal requirement, while not required by state law, was not "in conflict" with the state statutes.