**SUPPORTERS TO OPPOSE POLLUTION, INC.,**
**Plaintiff,**

v.

**The HERITAGE GROUP, et al., Defendants.**

**No. S90–562 (RLM).**

United States District Court,
N.D. Indiana,
South Bend Division.

March 29, 1991.

John C. Hamilton, South Bend, Ind., for plaintiff.

Christopher G. Scanlon, James W. Clark, Kevin M. Toner, Indianapolis, Ind., Thomas J. Brunner, Paul J. Peralta, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

*Background*

This is the fourth original action filed in this court concerning the Four County Landfill in Fulton County, Indiana, which this court ordered closed in *United States v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172 (N.D.Ind.1989), *aff'd*, 917 F.2d 327 (7th Cir.1990) ("EPA Action"). That case, Cause No. S87–55, was brought by the Environmental Protection Agency ("EPA"), and the citizen group Supporters to Oppose Pollution, Inc. ("STOP") intervened. Following a thirty-one day trial, the court ordered the owners and operators of the Four County Landfill, Environmental Waste Control, Inc. ("EWC"), James A. Wilkins, Stephen W. Shambaugh, and West Holding Co., to cease operating the landfill, to permanently refrain from operating it in the future, to take the corrective action proposed by the EPA to address the release of hazardous waste into the groundwater, to implement a closure plan within 180 days of its approval, and to pay a civil penalty. That judgment was affirmed on appeal, 917 F.2d 327 (7th Cir.1990), and a petition for *certiorari* pends in the United States Supreme Court.

On July 14, 1989, STOP mailed the defendants in this case notice of its intent to commence an action against them under certain provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), (B). Ten days later, STOP filed its promised complaint ("STOP I"). On October 4, 1989, the defendants moved to dismiss STOP I pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). STOP moved under Fed.R.Civ.P. 60(b) to vacate the judgment in the EPA Action to add party defendants. That motion was denied in March, 1990.

On November 17, 1989, STOP voluntarily dismissed STOP I and filed an action ("STOP II") under the same provisions of RCRA. The court dismissed STOP II on July 31, 1990. On August 10, STOP served notice of its intent to sue as a prelude to this action and, on November 20, filed this action ("STOP III").

The defendants now move for dismissal, claiming the court lacks subject matter jurisdiction due to STOP's failure to provide a ninety-day nonadversarial notice period pursuant to 42 U.S.C. § 6972(b)(2)(A) and claiming further that this action is barred by the doctrine of *res judicata.* [1]

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim. The complaint's factual allegations will be taken as true and viewed in the light most favorable to the plaintiff when challenged by a motion to dismiss. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Brown v. City of Lake Geneva,* 919 F.2d 1299, 1300 (7th Cir.1990). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gregory v. Nunn,* 895 F.2d 413, 414 (7th Cir.1990); *Gold v. Wolpert,* 876 F.2d 1327, 1329 (7th Cir.1989) (dismissal appropriate if complaint "failed to allege any set of facts on which relief could be granted").

Under the notice pleading of the Federal Rules of Civil Procedure, a complaint must include allegations respecting all material elements of all claims asserted; bare legal conclusions attached to narrated facts will not suffice. *Strauss v. Chicago,* 760 F.2d 765, 768 (7th Cir.1985); *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984).

### Subject Matter Jurisdiction

 STOP asserts claims of imminent endangerment pursuant to 42 U.S.C. § 6972(a)(1)(B), which provides in part:

Except as provided in subsection (b) ... any person may commence a civil action on his own behalf—

\* \* \* \* \* \*

(B) against any person, including ... any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

A private party's right to bring an imminent endangerment action is limited by subsection (b)(2)(A), which provides:

No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section....

The defendants assert that this notice requirement is jurisdictional. They rely in part on the Supreme Court's recent holding that a plaintiff's failure to comply with the sixty-day notice requirement of 42 U.S.C. § 6972(b)(1) barred suit pursuant to § 6972(a). *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). In that case, however, the court stated:

[W]e hold that the notice and the 60–day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a District Court may not disregard these requirements at its discretion. The parties have framed the question presented in this case as whether the notice provision is jurisdictional or procedural. In light of our literal interpretation of the statutory requirement, we need not de-

---

**1.** The defendants also claim that the court lacks subject matter jurisdiction over any claims brought pursuant to 42 U.S.C. § 6973 because that section does not provide for private actions. STOP's response concedes this position.

termine whether § 6972(b) is jurisdictional in the strict sense of the term.

*Hallstrom v. Tillamook County*, 110 S.Ct. at 311. The defendants also cite this court's opinion in the EPA Action, which acknowledged that the Seventh Circuit views the notice requirement as jurisdictional. *United States v. Environmental Waste Control, Inc.*, 710 F.Supp. at 1190.

The defendants claim that the ninety-day notice period required by § 6972(b)(2)(A) must be a "nonadversarial" period, relying in part on this court's dismissal of STOP II, which stated that:

> Since only ten days elapsed between the giving of notice and the filing of the first action, merely dismissing the first action and refiling on the same day did not give the defendants a ninety-day nonadversarial period within which to comply with RCRA regulations. STOP's dismissal of the first suit and immediate refiling of the second action is the functional equivalent to staying the action for the statutory period to achieve compliance with the notice requirement. The *Hallstrom* Court specifically rejected that approach, 110 S.Ct. at 309, noting that because citizen suits under RCRA generally are filed by trained lawyers who are presumed to be aware of statutory requirements, it is not unfair to require strict compliance with statutory conditions precedent to filing suit. *Hallstrom*, 110 S.Ct. at 310.

Memorandum and Order of July 31, 1990, p. 8. Notice of the STOP III action was served while STOP's motion to alter or amend the July 31 dismissal of STOP II was pending in this court. STOP II remains pending on appeal. The defendants claim that because STOP continues to litigate the RCRA claims asserted in STOP II, it has failed the ninety-day nonadversarial notice requirement.

STOP claims it meets the requirements of subsection (b)(2)(A) because its August 10, 1990 notice preceded the filing of this suit by 102 days. STOP argues that neither *Hallstrom* nor the statute requires a nonadversarial period, *i.e*, a period in which no litigation of any kind is pending on any claims against the defendants. The subsection's language does not specifically state that the notice period must be nonadversarial. STOP further argues that inserting the requirement of "non-adversariness" into the notice requirement emanates from an overly expansive reading of dicta in *Hallstrom*, 110 S.Ct. at 312, wherein the Court stated that its "decision will further the Congressional purpose of giving agencies and alleged violators a 60–day nonadversarial period to achieve compliance with RCRA regulations." The *Hallstrom* Court only held, STOP contends, that if a plaintiff fails to meet the notice requirements of § 6972(b), the court must dismiss the action.

In *Hallstrom*, the plaintiffs gave notice to the alleged violator, the operator of a sanitary landfill, one year before suit. Following the defendant's motion for summary judgment based on lack of notice to the State and the EPA, the plaintiffs notified the state and federal agencies of the suit. The district court denied summary judgment on the ground that the plaintiffs had satisfied the notice requirement. The Supreme Court affirmed the Ninth Circuit's order remanding the case to the district court with instructions to dismiss. STOP notes that in that case neither the State of Oregon nor the EPA had been given presuit notice of any kind; therefore, they could not involve themselves in compliance with the RCRA regulations. In this case, however, the defendants and the state and federal agencies had 102 days notice before this action was commenced, in addition to the notices provided as a prelude to STOP I and II. During this time, the defendants or the agencies presumably could have involved themselves in compliance.

STOP also argues that even if the "nonadversariness" requirement is read into the statute, it should not apply to this case because this action invokes 42 U.S.C. § 6972(a)(1)(B), and the EPA Action and STOP II do not. Although STOP II included an imminent endangerment claim, STOP is appealing only the dismissal of Count II, which invoked 42 U.S.C. § 6972(a)(1)(A). STOP claims that *Hallstrom*, in its literal interpretation of the notice requirement,

does not require the district court to dismiss any imminent endangerment suit against third parties responsible for endangerment so long as some form of action against them exists. After Justice O'Connor stated that Congress intended to provide a ninety-day nonadversarial period to achieve compliance, she stated:

> Nor will the dismissal of this action have the inequitable result of depriving petitioners of their "right to a day in court." Petitioners remain free to give notice and file their suit in compliance with the statute to enforce pertinent environmental standards.

*Hallstrom v. Tillamook County,* 110 S.Ct. at 312. STOP contends that it gave notice and filed suit as provided in that opinion.

The holding in *Hallstrom* that notice is a condition precedent to suit does not state whether any related litigation may proceed during the notice period, but it does not seem to contemplate a scenario in which parties would be litigating factually related issues during the notice period. It appears that *Hallstrom* does require a nonadversarial period within which the alleged violator or the state or federal agency may achieve compliance with the RCRA. Because STOP has not afforded the defendant this nonadversarial period, this case must be dismissed. Because of the potential for subsequent complaints, the court will address the alternative ground for dismissal, as well.

### Res Judicata

■ The defendants claim that this action is barred by the doctrine of *res judicata,* under which a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). This doctrine bars litigation of issues that could have been raised in the prior action, as well as those actually raised. *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1364 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). The doctrine's purpose is "to force a plaintiff to explore all the facts, develop

all the theories and demand all the remedies in the *first suit." Shaver,* 840 F.2d at 1367 n. 2 (*quoting* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4408, at 65 (1981)) (emphasis in original).

The elements of *res judicata* are:

> (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Brown v. J.I. Case Co.,* 813 F.2d 848, 854 (7th Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987) (*quoting Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982)). The defendants claim that the allegations of the STOP III complaint meet the first and third elements of *res judicata.* In paragraph 11, STOP alleges that the EPA Action resulted in a final judgment on the merits against EWC. In paragraphs 15, 16, 57, and 59, STOP alleges that the STOP III defendants should be held responsible for closure and corrective action by virtue of their privity with the defendants in the EPA action. Paragraph 15 alleges:

> This action seeks to impose on the Heritage Group liability for remediation of the imminent endangerment the Landfill presents to human health and the environment that has been uncovered since the judgment; costs of closure and corrective action with respect to the Landfill, as well as plaintiff's expenses, including its attorneys fees and expert witness fees, incurred in this action. It does so on the ground that EWC and the other original defendants turn out to have been little more than puppets; the real operator of the Landfill was the Heritage Group, acting through three, or more, of its several constituent corporate members.

The defendants claim that the second element of *res judicata,* identity of causes of action, is also present. A cause of action is " 'a core of operative facts' which give rise to a remedy." *Shaver v. F.W. Woolworth Co.,* 840 F.2d at 1365 (*quoting In the Matter of Energy Cooperative, Inc.,*

814 F.2d 1226, 1230–31 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987)). In the Seventh Circuit, the "same transaction" test determines the scope of a cause of action:

> This "same transaction" test is decidedly fact-oriented. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. Thus, "a mere change in legal theory does not create a new cause of action."

*Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986) (*quoting Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir.1985)).

According to the defendants, STOP seeks to assert in STOP III the same cause of action that it pursued in the EPA Action because the claims in both suits arose from the same set of operative facts. In the EPA Action, STOP claimed that: the landfill was improperly constructed and operated; hazardous waste had been released into the air, surface water, and ground water; hazardous waste constituents were migrating off of the site; and the releases posed a threat to human health or the environment. In this action, STOP alleges that: the landfill is improperly constructed and operated (STOP III Complaint, ¶¶ 49–50, 52–53); hazardous waste constituents have been released into the air, surface water, and ground water (STOP III Complaint, ¶¶ 35–48, 58); hazardous waste constituents are migrating off the site (STOP III Complaint, ¶ 58); and these releases constitute a threat to human health and the environment (STOP III Complaint, ¶ 58).

STOP argues that *res judicata* does not bar this action for several reasons. First, it claims that the imminent endangerment claim asserted in this action was not asserted in the EPA Action, and it is not in issue in the appeal of STOP II. The EPA Action established liability against the owners or operators of the landfill pursuant to 42 U.S.C. § 6928, but the imminent endangerment claim is brought pursuant to the more expansive language of 42 U.S.C. § 6972, which provides for liability of any person

who has contributed to or is contributing to handling of solid or hazardous waste.

STOP also states that the EPA Action did not include allegations that the MTR cells leaked in violation of 42 U.S.C. § 6924(*o* ), as STOP III does in paragraphs 52–54. On this point, the defendants note the Seventh Circuit's admonition that a change in legal theory does not give rise to a new cause of action. *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d at 593, and cases cited therein.

STOP also argues that the facts in this action differ from those in the EPA Action. When the EPA Action was tried, neither plaintiff knew of the high levels of contamination in the wells in Units A and B (STOP III Complaint, ¶ 41). STOP III points to high levels of contaminants in water samples taken from ground water at the landfill as late as August 24, 1990. STOP argues that each reading is evidence of a release and an independent event, citing *Werlein v. United States*, 746 F.Supp. 887, 896–97 (D.Minn.1990). In *Werlein*, the court dismissed the plaintiffs' claims under 42 U.S.C. § 6972(a)(1)(A), agreeing with the defendants that because the defendants had not owned or operated their business at the site in issue for several years, any violations of this statute were "wholly past". However, the court determined that the claims brought pursuant to the Clean Water Act alleged an ongoing violation since the toxic waste had not yet reached the waterway, but was being introduced into the waterway over a period of time. Because the purposes of the Clean Water Act could be fulfilled by preventing toxic substances from entering the water, the court did not dismiss the claims under this Act.

STOP asks the court to follow the reasoning of *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), a patent infringement action in which the Court stated that the *res judicata* opponents should be given an opportunity "to amend their pleadings, and to supplement the record with any evidence showing why an estoppel should not be im-

posed...." 402 U.S. at 350, 91 S.Ct. at 1453–54. However, the Court provided for amending the pleadings and supplementing the record in that case because it was overruling *Triplett v. Lowell,* 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), and, therefore, allowing the petitioner to plead estoppel. The *Blonder–Tongue* Court also stated:

> [W]e do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical question finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." ...
>
> Determining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter.... [N]o one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial court's sense of justice and equity....
>
> This is especially true if the court in the second litigation must decide in a principled way whether or not it is just and equitable to allow the plea of estoppel in the case before it.

*Blonder–Tongue,* 402 U.S. at 332–334, 91 S.Ct. at 1445. STOP urges this court to consider Congress' intent, equitable principles, and the complexity of this RCRA action in determining whether to grant the defendants' motion.

In paragraphs 22–23, STOP alleges that, given the nature of the litigation that preceded trial of the EPA Action, it was unable to learn of the close links between the defendants in the EPA action and the defendants in STOP III. In fact, the Justice Department apparently was unaware of this relationship until after EWC's bankruptcy generated some information. In

this regard, this case differs from *Lowell Staats Mining Co. v. Philadelphia Electric Co.,* 878 F.2d 1271 (10th Cir.1989), upon which the defendants rely. In *Lowell Staats,* the frustrated judgment creditor knew beforehand the relationships among the various parties from whom it attempted to recover in a second suit. *See* 878 F.2d at 1279. Further, as that case invoked common law, the court lacked the guidance of a clearly expressed congressional intent, such as the intent in this case to prevent harm to human health and the environment due to hazardous waste contamination. STOP is asserting claims based in part on information it received after EWC filed bankruptcy (*see, e.g.,* STOP III Complaint, ¶¶ 13–14, 23, 44) and based in part on contamination and other events occurring after the judgment in the EPA Action (*see, e.g.,* STOP III Complaint, ¶¶ 46–47, 49–54, 58). Therefore, it argues that different sets of operative facts gave rise to both this case and the EPA Action.

STOP also states that until the judgment in the EPA Action, no one knew that those defendants, alleged to be nominal operators of the landfill, would file bankruptcy and prove themselves incapable of safeguarding the landfill.

The defendants claim that it does not matter when STOP learned of their close links with EWC; information as to their relationship was available before the judgment in the EPA Action. Furthermore, the order of March 14, 1990 denied STOP's motion to vacate the judgment and allow it to amend the complaint to add defendants because of STOP's failure to engage in pretrial discovery which could have revealed information upon which STOP relied in bringing its motion. The defendants argue that because STOP did not explore all facts and develop all theories in litigating the original EPA Action, it is now barred from seeking to litigate those facts and theories in this case.

In *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d at 596, the Seventh Circuit held that *res judicata* barred a second action based on the same set of operative facts as

the first, notwithstanding the plaintiffs' assertion that it did not discover facts giving rise to the second action until after the first had been dismissed.

In essence, Car Carriers claims that since res judicata will not bar actions based on facts *occurring after* the initial judgment ... presumably because those facts were unknown to the plaintiffs when they initiated their first action—res judicata should likewise not bar claims based on prejudgment facts which were unknown to the plaintiffs when they filed. We find this contention to be absolutely without merit.

... [A]ll of the appellants' claims were part of the same cause of action; they all arose from the same factual context and since the appellants had sufficient knowledge to sue on one claim, they also had sufficient knowledge to sue on the rest of their claims. When a litigant files a lawsuit, the courts have a right to presume that he has done his legal and factual homework. It would undermine the basic policies protected by the doctrine of res judicata to permit the appellants to once again avail themselves of judicial time and energy while another litigant, who has yet to be heard even once, waits in line behind them.

In addition to arguing that the facts and legal theories of this case differ from those in the EPA Action, STOP argues that "policy will not allow res judicata to apply against STOP because of the facts and because of the legislation this case seeks to enforce." STOP Memo in Opposition to Motion to Dismiss, p. 2. Policy alone, however, has not convinced the Supreme Court or the Seventh Circuit that *res judicata* should not bar relitigation of issues in appropriate cases. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401–02, 101 S.Ct. 2424, 2429–30, 69 L.Ed.2d 103 (1981); *La Preferida v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 907–09 (7th Cir.1990).

The court agrees with the defendants that a change in legal theory does not create a new cause of action and that *res judicata* forces plaintiffs to bring all their claims in one suit rather than filing repetitive suits. Therefore, the court finds unavailing STOP's argument that this action invokes a different statute than the EPA Action.

Despite the compelling policy arguments STOP raises, the court concludes that this action is grounded on the same set of operative facts as the EPA Action. Essentially, STOP is seeking to hold the defendants in this action liable for the costs of the relief ordered in the EPA Action. Further, any allegations of contamination occurring at the landfill site since the judgment in the EPA Action cannot be separated from the context of the EPA Action in which the court ordered permanent closure of the landfill and other corrective action.

### Conclusion

For the foregoing reasons, the court hereby GRANTS the defendants' motion to dismiss.

SO ORDERED.