# SUPPORTERS TO OPPOSE POLLUTION, INC.,
Plaintiff–Appellant,

v.

# The HERITAGE GROUP, et al.,
Defendants–Appellees.

Nos. 91–1247, 91–1728 and 91–2884.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1991.

Decided Aug. 28, 1992.

Rehearing and Rehearing En Banc
Denied Oct. 5, 1992.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, Ind., Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., Anna Thode, Maria Cintron Silva, Washington, D.C., Thomas C. Jacobs, E.P.A., Region 5, Office of the Regional Counsel, Chicago, Ill., Robert Oakley, F. Henry Habicht, Frank Bentkover, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for E.P.A.

John C. Hamilton (argued), Doran, Blackmond, Ready, Hamilton & Williams, South Bend, Ind., Charles M. Tebbutt, Syracuse, N.Y., for plaintiff-appellant.

James H. Pankow, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, Ind., George W. Pendygraft, George Plews, Peter M. Racher, Plews & Shadley, James M. Matthews, Christopher G. Scanlon (argued), Kevin M. Toner, James W. Clark, Maureen F. Bernard, Baker & Daniels, In-

dianapolis, Ind., Thomas J. Brunner, Jr., Baker & Daniels, South Bend, Ind., for defendants-appellees.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Environmental Waste Control, Inc., operated the Four County Landfill in Indiana—poorly. The Environmental Protection Agency sued EWC under the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §§ 6901–87, and obtained an order requiring EWC to close the dump, take some corrective action, and pay a fine of $2.8 million. *EPA v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172 (N.D.Ind.1989), affirmed, 917 F.2d 327 (7th Cir.1990).

EWC has not paid the fine; it never could have paid such a sum. It is a thinly capitalized firm, almost a one-man band. (That man is Stephen W. Shambaugh, its CEO and half owner; James A. Wilkins owns the other half.) Even thinly capitalized firms have some working funds. Beginning in 1986 EWC borrowed money from firms affiliated with The Heritage Group, which to protect its investment did some supervision, but not enough to keep Shambaugh within the bounds of the law. Needless to say, Heritage has lost its investment. An entity calling itself Supporters to Oppose Pollution (StOP) believes that Heritage, having propped up EWC, should dig deeper into its pockets to pay for the cleanup. StOP apparently is willing to litigate perpetually in support of this position; the number of its lawsuits and the district judge's enthusiasm for them have been inversely related.

## I

As a co-plaintiff in the EPA's action against EWC, StOP tried at the last minute to add Heritage as a defendant, contending that Heritage is EWC's alter ego under Indiana law. The EPA opposed the addition of Heritage, fearing that more parties would delay the suit. Heritage added that it is distinct from EWC, which ran the landfill without Heritage's aid between 1978 and 1986; neither Shambaugh nor Wilkins is employed by or an investor in Heritage. The district court rebuffed StOP's effort, in large measure because StOP, having neglected discovery, could not prove its claims of linkage. StOP did not appeal from the district court's order keeping Heritage out of the original suit. StOP has nonetheless tried four more times to involve Heritage, and we have appeals from three of these four additional efforts.

■ Congress authorized private citizens to enforce RCRA through litigation, 42 U.S.C. § 6972, and StOP filed such a suit, which we call *SOP I.* (StOP represents persons living close to the garbage, which has at least the potential to injure them, so the Constitution permits it to litigate. Compare *Lujan v. Defenders of Wildlife,* — U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), with *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).) Section 6972 requires a would-be champion to try negotiation before litigation. To be precise, "[n]o action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to ... any person alleged to have contributed" to the handling or storage of the waste. 42 U.S.C. § 6972(b)(2)(A)(iii). StOP ignored this rule, mailing Heritage a notice on July 14, 1989, and filing the complaint on July 24. StOP dismissed *SOP I* under Fed.R.Civ.P. 41(a) on November 17, 1989, shortly after *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), reiterated that § 6972 requires pre-suit notice, and not just a stay of the litigation.

The same day it dismissed *SOP I,* StOP filed *SOP II,* asserting that 90 days had passed since the notice mailed on July 14. The district judge dismissed *SOP II* because Heritage still had not received the 90 days of *non-adversarial* time that the statute contemplates. 1990 WL 258383, 1990 U.S.Dist. LEXIS 18127. StOP argued that because it appended a claim that the landfill violates a permit or regulation under

RCRA advance notice is not necessary. (StOP originally claimed that it was proceeding under § 6973, but only the EPA may enforce that statute. The district judge corrected the mis-citations when denying StOP's post-judgment motion. Although some confusion lingers in the parties' briefs, we treat *SOP II* as pursuing a claim under §§ 6924 and 6925.) The district judge replied that private parties are not authorized to invoke this branch of RCRA if the EPA has commenced and is diligently pursuing an action. 42 U.S.C. § 6972(b)(1)(B). Judge Miller held that the EPA had prosecuted the original action against EWC diligently and obtained substantial relief. If as StOP contends Heritage really is the alter ego of EWC, then relief already runs against Heritage and the EPA may claim the fruits of victory; if Heritage is not EWC's alter ego, then StOP has no claim on the merits. So it loses either way. StOP's appeal of this order is No. 91–1247.

The judgment dismissing *SOP II* was entered on August 1, 1990. On August 10 StOP served another notice on Heritage, and it filed suit (*SOP III*) on November 20. This suit met the fate of *SOP II*, as the judge reiterated his holding that RCRA gives the adversary 90 non-adversarial days before suit on the claim StOP raised. Because StOP's motion to reconsider the dismissal of *SOP II* was pending, Heritage had yet to receive any non-litigious time. 760 F.Supp. 1338 (1991). Judge Miller gave an alternative ground: claim preclusion (res judicata), for StOP was presenting a new legal theory in support of the same relief sought or obtained in the original suit. The appeal from this judgment is No. 91–1728.

Meanwhile EWC filed for bankruptcy, having insufficient assets to clean up the waste. StOP is among its creditors, having been awarded attorneys' fees in *EPA v. EWC*, 737 F.Supp. 1485 (1990). In *SOP IV* the group asked the judge to remove the bankruptcy case to district court (he declined) and attempted to commence supplemental "enforcement" proceedings against Heritage. Judge Miller found these barred by 11 U.S.C. § 362, the automatic stay in

bankruptcy, because StOP, as a creditor, was trying to reach assets of the estate. 131 B.R. 410 (1991). To the extent StOP was trying to enforce a claim *by* the EWC estate against Heritage for contribution or indemnity, it is the wrong party. The claim belongs to EWC's trustee, not to creditors. And to the extent StOP was trying to *add* Heritage as a party, it was renewing a request the district judge had rejected in the same case. Once again the district judge invoked res judicata to clean up any residue. StOP's appeal from the judgment in *SOP IV* is No. 91–2884.

## II

■ On the appeal of *SOP II*, plaintiff contests only the district court's conclusion that the EPA's action against EWC blocks a private action, under §§ 6924, 6925, and 6972(a)(1)(A), to enforce permits and regulations issued under RCRA. This is a subject on which notice is necessary, see § 6972(b)(1)(A), but the suit may follow immediately on the giving of notice. Private litigation under these sections is forbidden, however, if the EPA "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . . to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order." 42 U.S.C. § 6972(b)(1)(B). Notice that this statute refers to an action to "require compliance with such permit [or] regulation"—not an action against the private party's chosen adversary, but an action to require compliance. Judge Miller concluded that the EPA had filed, diligently pursued, and won, an action to require compliance with EWC's permit and federal regulations.

■ StOP does not challenge this conclusion so much as it contends that even though the EPA prevailed, the risk continues. EWC closed the dump, so no new hazardous materials are being deposited. But because EWC ran out of money to clean up the wastes, the risk to groundwaters continues. It is to curtail this risk that it must be allowed to bring in new, deep-pocket defendants, StOP insists. This ap-

proach supposes, however, that § 6972(b)(1)(B) applies only when the EPA has succeeded by the private party's definition of success. The statute does not require that the EPA succeed; it requires only that the EPA *try,* diligently.

Section 6972(b)(1)(B) belongs to a genre common to environmental laws under which citizen suits serve as goads to both the EPA and polluters without displacing the federal agency as the principal enforcer. When describing a similar provision in the Clean Water Act, the Supreme Court observed that citizen suits may supplement but not supplant public litigation. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 378, 98 L.Ed.2d 306 (1987). It gave a telling example. "Suppose that the Administrator identified a violator of the Act and issued a compliance order.... Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit ... in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably." *Id.* at 60–61, 108 S.Ct. at 378. An Administrator unable to make concessions is unable to obtain them. A private plaintiff waiting in the wings then is the captain of the litigation. And it makes no difference that this person chooses to sue another party. If as StOP insists EWC and Heritage really *are* the same entity, then the ability to sue Heritage is the ability to sue EWC for more than the EPA obtained, and fear of this liability will lead Heritage (that is, EWC) to fight to the death in the initial case.

To say, as StOP would, that the EPA is not "diligently prosecuting" the action if it does not sue the persons, or use the theories, the private plaintiff prefers would strip EPA of the control the statute provides. *North & South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552, 555–56 (1st Cir.1991), holds that an enforcement action under a part of the Clean Water Act containing a limitation materially identical to § 6972(b)(1)(B) bars private litigation even though the public plaintiff settled for declaratory and injunctive relief, while the private one demands damages. The first circuit concluded that under such statutes public agencies' litigation decisions may not be second-guessed by the device of filing an independent suit. Primary responsibility lies with public enforcers. "Merely because the State may not be taking the precise action [the private plaintiff] wants it to or moving with the alacrity [that plaintiff] desires does not entitle [the private plaintiff] to injunctive relief." *Id.* at 558.

"Diligent" prosecution is all the statute requires. Although StOP wants a trial on the question whether the EPA's prosecution was "diligent," such follow-up inquiries are appropriate only when the agency loses its suit and the private litigant insists that the agency had not tried hard enough. RCRA permits a follow-on private suit if the public suit was not prosecuted diligently. But if the agency prevails in all respects, that is the end; § 6972(b)(1)(B) does not authorize a collateral attack on the agency's strategy or tactics. At all events, there can be no serious question about the EPA's conduct of its suit. Judge Miller, who presided over that case as well as all four of StOP's later actions, found that the EPA prosecuted vigorously. It would be asinine to require Judge Miller to hold a new trial at which the only question would be whether he accurately assessed the conduct of the first trial.

Behind all of this fighting is StOP's belief that the EPA underestimates the seriousness of the risk posed by this landfill. Although RCRA provides some remedies, the heavy artillery lies in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601–26. Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606–07, permit the EPA to direct almost anyone connected with hazardous waste to bear the costs of cleanup, and if they cannot or will not do so, to tap the "Superfund" for the necessary money. Several courts have

held that the EPA may collect from parent corporations, corporate affiliates, and even major lenders that took a supervisory role. E.g., *United States v. Kayser–Roth Corp.*, 910 F.2d 24 (1st Cir.1990) (parent corporation); *United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990) (secured lender with a "capacity to influence" the borrower's waste disposal). See also David W. Leebron, *Limited Liability, Tort Victims, and Creditors*, 91 Colum.L.Rev. 1565, 1641–46 & n. 227 (1991); Note, *Cleaning up the Debris After Fleet Factors: Lender Liability and CERCLA's Security Interest Exemption*, 104 Harv. L.Rev. 1249 (1991). Broad though it is, CERCLA has limits. *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir.1988); *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1439 (7th Cir.1988). We need not decide whether to embrace decisions such as *Fleet Factors* or how they would apply to Heritage. If the hazards at the Four County Landfill are as serious as StOP thinks, then CERCLA holds the key to further relief. Doubtless StOP believes that *it* should be able to initiate a cleanup under CERCLA and send Heritage the bill, but that is not the way Congress wrote these statutes, and courts have no business bending one statute out of shape because litigants (or even the judges) believe that Congress should have written another statute differently.

### III

■ When dismissing *SOP III*, which seeks relief on the theory that the landfill presents an "imminent and substantial endangerment to health or the environment", § 6972(a)(1)(B), the district court initially observed that StOP had yet to give Heritage 90 post-notice days during which no litigation was pending. 760 F.Supp. at 1340–42. Advance notice is essential to a suit under § 6972(a)(1)(B). See § 6972(b)(2)(A). Anticipating that StOP would sooner or later comply with the notice requirement, the court went on to hold that StOP's demands against Heritage are barred by doctrines of claim preclusion, making better notice unimportant. Although StOP cites a different section of RCRA with each additional suit, the district court concluded that these are new legal theories in support of one claim for relief, and that because by StOP's own argument Heritage is at least a privy of EWC (if it is not EWC's alter ego), the final judgment concerning EWC in the case the EPA and StOP jointly prosecuted forecloses any later litigation against Heritage under RCRA.

■ Claim preclusion bars all claims that were or could have been raised against the parties and their privies in the first case. StOP's whole theory is that Heritage is a privy of EWC—that it was indeed pulling the strings. And there is no doubt that the claim under § 6972(a)(1)(B) could have been raised in *EPA and StOP v. EWC*. StOP all but concedes that under the approach to preclusion stated in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and *Reed v. Allen*, 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054 (1932), it must lose. Nonetheless, StOP attacks the district judge's application of these rules by arguing for "equitable" exceptions to merger and bar.

Judge Miller concluded back in *EPA and StOP v. EWC* that Heritage could not be added because StOP had not been diligent in participating in discovery. Its own laziness in the initial suit is hardly an equitable reason for allowing continued litigation. At all events, *Moitie* scotches equitable arguments. The ninth circuit had treated preclusion as merely one consideration among many equitable factors that courts were to consider. The ninth circuit had reversed the first judgment between these parties (although the particular plaintiffs had not been among the appellants); it would be inequitable, the court of appeals concluded, to treat the defective judgment rather than the later opinion as controlling these parties' entitlements. In reversing, the Court pointedly observed that these plaintiffs had not appealed and so were stuck:

The Court of Appeals also rested its opinion in part on what it viewed as "simple justice." But we do not see the

grave injustice which would be done by the application of accepted principles of res judicata. "Simple justice" is achieved when a complex body of law developed over a period of years is even-handedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata." Heiser v. Woodruff,* 327 U.S. 726, 733 [66 S.Ct. 853, 856, 90 L.Ed. 970] (1946). The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.,* 283 U.S. 522, 525 [51 S.Ct. 517, 518, 75 L.Ed. 1244] (1931). We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299 [37 S.Ct. 506, 508, 61 L.Ed. 1148] (1917). 452 U.S. at 401, 101 S.Ct. at 2429. StOP calls this language (and most of the rest of the opinion) dictum and urges us to follow Justice Blackmun, who wrote in concurrence: "I, for one, would not close the door upon the possibility that there are cases in which the doctrine of res judicata must give way to what the Court of Appeals referred to as 'overriding concerns of public policy and simple justice.'" *Id.* at 402–03, 101 S.Ct. at 2430. But Justice Blackmun was concurring in the judgment rather than joining the opinion because the majority *had* closed that door. So far as an inferior federal court is concerned, that door remains closed until the Supreme Court opens it.

Traditional principles of preclusion allow additional litigation if some new wrong occurs. StOP contends that ongoing releases are new wrongs. Yet ongoing releases were known at the time of the initial suit; they were the principal basis of the claim. That the size of the release is better known now than then takes us nowhere; new evidence of injury differs from a new wrong, see *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 (7th Cir.1986). Additional knowledge about the loss from a tort does not authorize new suits. *Aliff v. Joy Manufacturing Co.,* 914 F.2d 39 (4th Cir.1990). There is no new wrongful conduct by Heritage after the conclusion of *EPA and StOP v. EWC.* StOP relies on *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955), but that case involved new conduct and so is beside the point.

Traditional principles of preclusion also allow the assertion of claims that could not have been presented in the first case because of limitations on the court's authority. *Restatement (2d) of Judgments* § 26(1)(c) (1982). StOP draws an analogy to this principle in stating that the EPA acquiesced in StOP's intervention only on the understanding that it would raise no new claims. An imminent endangerment claim under § 6972(a)(1)(B) would have been new, StOP insists, and thus outside its power to raise. Yet the EPA's views were not incorporated into any order of the court. Judge Miller observed that he placed no restrictions on StOP's conduct. 710 F.Supp. at 1192. The EPA is not authorized to give private suitors license to split their claims against third parties. StOP tried to add Heritage to the EPA's suit; the court denied this request because of StOP's inadequate preparation, not because of limitations on its role as an intervenor; StOP decided not to appeal. Cf. *Allied Industrial Workers Local 322 v. Johnson Controls, Inc.,* 969 F.2d 290, 292–93 (7th Cir.1992), (one who makes a calculated choice not to appeal may not begin a new lawsuit after coming to rue that decision). The doctrine on which StOP's analo-

gy depends is designed for courts of limited jurisdiction, where the law curtailing the court's power implies the need to use multiple forums. It does not extend to cases in which claim-splitting flows from the plaintiff's choice. Res judicata is a doctrine of defendant's protection, not of plaintiff's right.

In its reply brief StOP tries to retract the concession in its opening brief that Heritage is the privy of EWC. This comes too late and is more than a little odd, for the assertion that Heritage controlled EWC's actions is the foundation of StOP's substantive contentions. Be that as it may, the sequence here tracks *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979): suit # 1 by or against the cat's paw, followed by suit # 2 by or against the cat. Under *Montana,* cat and cat's paw are the same, and the second suit must be dismissed.

### IV

At last we reach *SOP IV.* Plaintiff does not contest Judge Miller's decision to leave the bankruptcy proceeding in bankruptcy court. Nonetheless, it submits, Fed. R.Civ.P. 69 and 71 permit it to add Heritage as a party and enforce against Heritage both the award of attorneys' fees against EWC and the substantive relief the EPA secured against that firm.

Although StOP's brief is none too clear, we infer that it is trying to pursue four sorts of claims, none properly.

First, it wants to collect the attorneys' fees it was awarded against EWC. This makes StOP a creditor, and it must collect this debt in the bankruptcy case or not at all. It cannot use Rules 69 and 71 to jump the queue. Rule 69 offers a way to marshal a judgment debtor's assets for execution. The bankruptcy proceeding serves that function too, and 11 U.S.C. § 362 obliges judgment creditors to use that forum exclusively unless the bankruptcy court lifts the automatic stay (which it has not).

Second, StOP appears to think that Heritage owes EWC money in the nature of contribution or indemnity, which if collected would permit EWC to complete the cleanup ordered in the initial action. Such a claim does not belong to StOP. Only the trustee in bankruptcy may vindicate EWC's rights. If StOP believes that the trustee is lax, it should complain to the bankruptcy judge rather than commence an independent proceeding. And if it is pursuing this claim on its own behalf, the action is barred by the automatic stay. StOP can't prefer its own claim, as a creditor of EWC, over that of other creditors that may desire to collect from one of the debtor's business associates. *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987).

Third, StOP submits that Heritage is jointly liable with EWC on the judgment to EPA and StOP (Rule 69), or liable to perform the injunction (Rule 71). This reiterates the request that the district judge add Heritage to the case as a formal party—a request made before, turned down before, and not appealed. Rules 69 and 71 do not create exceptions to the law of claim preclusion. Indeed, this is not a proper execution or supplemental enforcement proceeding of any kind. State law controls the identity of parties liable under Rule 69(a) on a judgment, and Indiana allows collection only against named judgment debtors and those the debtors themselves could have pursued. E.g., *Browning & Herdrich Oil Co. v. Hall,* 489 N.E.2d 988, 989 (Ind.App.1986) (a judgment lien "cannot attach to any greater interest than either the debtor himself has, or, in the exercise of his rights, that he could have voluntarily transferred."). What EWC had or could transfer is in the control of the bankruptcy court. StOP's essential point is that Heritage is not a judgment debtor but should be. StOP cites some Indiana veil-piercing cases, but none of these is a collection case. There is a big difference between (i) whom you may get a judgment against by pleading and proving the right things, and (ii) whom you may enforce a judgment against. StOP might have obtained a judgment against Heritage by acting with greater diligence in the initial

## 1328

case, but it did not. No case StOP has cited, and none we have found, allows enforcement against a non-party just because, had the case proceeded differently, a judgment could have been obtained against that person.

 As for Rule 71: a federal injunction constrains the named parties, plus others to the extent specified in Fed. R.Civ.P. 65(d). It can't be further expanded in the course of enforcement. If StOP thinks that Heritage is bound by the injunction under the terms of Rule 65(d), it could have brought an action for contempt in *EPA and StOP v. EWC*. Contempt proceedings against non-bankrupt persons obliged to perform the acts spelled out in the injunction are not forbidden by the automatic stay. But StOP did not file such an action and should not get any bright ideas, as a claim of this kind is foredoomed given the district judge's decision that StOP neglected its opportunity to gather and adduce evidence proving that Heritage is the cat and EWC the paw. A litigant can't use an "enforcement" action as a collateral attack on limitations the court deliberately included in the judgment being "enforced."

StOP is playing games. It contends that it is unconstrained by the limitations on the use of supplemental and enforcement proceedings because it is "really" vindicating rights created by RCRA. And it contends that it is unconstrained by the limitations on citizen suits under RCRA because it is "really" enforcing the judgment in the EPA's suit. It can't have things both ways. For reasons we have explained its failure to appeal in *EPA and StOP v. EWC* means that it now can't have things *either* of these ways.

Fourth and finally, StOP appears to believe that Heritage removed assets from EWC, preventing that firm from fulfilling its obligations under the judgment. This is either a fraudulent conveyance action or a preference action, which in either event belongs to EWC's trustee in bankruptcy, not to one of EWC's creditors.

We recognize plaintiff's frustration over the effect that application of preclusion

yields. Yet all litigants must accept the outcome of their cases, even if they wish in retrospect that they had acted differently. Plaintiff has had its day in court, has been heard out. Now it must STOP.

AFFIRMED.