**QUINCY MALL, INC., Plaintiff–Appellant,**

v.

**PARISIAN, INC., Defendant–Appellee.**

No. 00–4114.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 2001.

Decided Nov. 16, 2001.

Rehearing Denied Jan. 10, 2002.

Before FLAUM, Chief Judge, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Quincy Mall, Inc., an Ohio corporation, sued Parisian, Inc., an Illinois corporation, in Illinois state court seeking a declaratory judgment concerning its rights under a commercial lease and $600,000 in damages. After Parisian removed the case to federal court, it moved to dismiss the case under Fed.R.Civ.P. 12(b)(6), arguing that the action was barred by *res judicata*. The district court determined that *res judicata* did not apply, but that the case was barred by collateral estoppel, thus requiring the dismissal of the lawsuit. Quincy Mall appeals, and because we conclude that *res judicata* does apply, we affirm.

## I.

The facts in this case are convoluted. In a lease agreement dated May 16, 1977, Quincy Mall leased real property in the City of Quincy, Illinois to Parisian's predecessor, P.A. Bergner of Illinois, a retail department store.[1] On January 1, 1979, the City of Quincy issued industrial reve-nue bonds and, pursuant to a separate financing agreement, loaned the proceeds of those bonds to Parisian. This agreement provided financing for Parisian's construction of a retail department store on the real estate it had leased from Quincy Mall. To secure Parisian's obligations under the financing agreement, Quincy Mall and Parisian each granted the City of Quincy a first mortgage lien on the construction project. The mortgage granted the City of Quincy a security interest in all of Quincy Mall's interest in the Lease, a security interest in Parisian's leasehold estate under the Lease, a security interest in Quincy Mall's fee estate in the construction project, a security interest in all improvements to the project, as well as the proceeds resulting from the conversion of the project into any liquidated claims. In short, the City had a priority lien on the real estate, the leasehold interest, the rents receivable, and other related assets. The City then assigned all of its rights under the mortgage to Bank One, Peoria, as Trustee pursuant to an Indenture of Trust dated January 1, 1979.

Twelve years later, on August 23, 1991, Parisian and various related corporations filed petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code. *See In re P.A. Bergner & Co. et al.,* 187 B.R. 964 (Bkrtcy.E.D.Wis.1995). At the time of filing, Parisian was current on its obligations to Quincy Mall under the Lease, and to Bank One under the industrial revenue bonds. However, on January 1, 1992, Parisian defaulted on the revenue bond note to Bank One. On March 19, 1992, Quincy Mall filed a proof of claim with the bankruptcy court seeking "to cover the future potential loss of its rents and/or fee simple title which are subject to

1. Bergner became P.A. Bergner & Co. in October 1990. In October 1993, it became known as Carson, Pirie Scott & Co. by merger and name change. In January 1999, Carson became Parisian, Inc. by merger and name change. For convenience, we will refer to the entity as "Parisian" throughout this opinion.

the terms of the mortgage...." Quincy Mall relied on its rights under the Lease, the mortgage, and the financing agreement as support for the proof of claim.

On November 9, 1992, during the course of the bankruptcy proceedings, Parisian and Quincy Mall entered into a Letter Agreement amending the Lease. This Letter Agreement provided that if Quincy Mall ceased to receive the minimum rent under the Lease, as a result of any foreclosure or conveyance in lieu of foreclosure "in connection with any mortgage or other financing obtained by" Parisian, then Parisian would nonetheless continue making such payments directly to Quincy Mall. Shortly thereafter, on December 11, 1992, Bank One initiated an action to foreclose on the mortgage against Quincy Mall's fee interest in the real property. After the filing of the foreclosure, Bank One requested and obtained the appointment of a receiver to receive rents payable by Parisian to Quincy Mall under the Lease.

In 1994, the receiver began to receive from Parisian the rents otherwise due to Quincy Mall. On May 17, 1995, Quincy Mall made a written demand pursuant to the Letter Agreement that Parisian pay it the equivalent of the lost rents now being paid to Bank One. Parisian refused, questioning the effectiveness of the Letter Agreement. Thereafter, Quincy Mall entered into a settlement with Bank One to prevent a foreclosure sale of the real property, and to return the stream of rent payments from the receiver to Quincy Mall. Under the settlement agreement,[2]

Quincy Mall paid Bank One $600,000 and granted it other rights in the leased premises, valued at $123,444.

Meanwhile, in bankruptcy court, Parisian and Quincy Mall continued their dispute. On July 16, 1993, Parisian objected to Quincy Mall's proof of claim. Parisian's bankruptcy plan was confirmed on October 23, 1993, and the Lease, now amended by the Letter Agreement with Quincy Mall, was assumed under the plan.[3] A certificate of resolution[4] was filed with the bankruptcy court on December 13, 1994 and included all of Quincy Mall's claims. Accordingly, upon submission of the certificate of resolution to the bankruptcy court, Parisian withdrew its objection to Quincy Mall's claim, apparently believing that the dispute had been resolved by the confirmation of its plan of reorganization. It appears, although it is not clear from the record, that this dispute was resolved because Quincy Mall continued to receive rents from Parisian through the confirmation of the plan. The certificate of resolution permitted Parisian to reinstate its objections if the holder of a disputed claim sought payment or asserted rights post-confirmation. When Quincy Mall subsequently asserted a claim against Parisian for the amount it had paid to Bank One, Parisian reinstated its objection pursuant to the certificate of resolution.

Thus, on May 24, 1999, Parisian reinstated its objection to Quincy Mall's claim, arguing that any relief sought by Quincy Mall was subordinate to the unsecured claims of Bank One.[5] On June 11, 1999,

2. This settlement agreement was not included in the record on appeal.

3. According to the Bankruptcy Code, the bankruptcy trustee or debtor in possession may assume or reject any executory contract or unexpired lease of the debtor. *See* 11 U.S.C. §§ 365(a), 1123(b)(2).

4. The final plan of reorganization and certificate of resolution were not included in the

record on appeal, but the reinstated objection Parisian filed with the bankruptcy court recites the relevant portions of these documents. Quincy Mall did not object to Parisian's description and we therefore accept these descriptions as accurate for purposes of this appeal.

5. In its objection to Quincy Mall's claim, Parisian stated that, pursuant to its 1996 settle-

Quincy Mall filed a response, in which it referred to Parisian's obligations under the Lease and Letter Agreement stating that the "effectiveness of that letter agreement is now in dispute." Quincy Mall argued in its response that Parisian withdrew its objection and therefore it could not be reinstated. Quincy Mall did not address Parisian's claim that Quincy Mall was seeking relief that had already been resolved in the confirmation of the plan, or was subordinate to Bank One's unsecured (and unpaid) claim. On December 22, 1999, pursuant to an order of the bankruptcy court, Quincy Mall filed an amended claim setting the amount of its claimed damages at $723,444 (which specifically included the $600,000 cash payment and the value of the rights it gave to Bank One). The amended claim alleged that Quincy Mall was seeking relief "for damages which might result from any action by Bank One to realize upon the mortgage upon Quincy Mall's real property." Quincy Mall no longer referred to the "lost rents" it had requested in its original proof of claim. Additionally, the amended proof of claim contained a "Statement to Clarify Claims before this Court" in which Quincy Mall asserted that it had suffered "separate and additional post-confirmation damages" arising from Parisian's breach of the Letter Agreement, and that these claims were excluded from those currently pending before the bankruptcy court. Parisian objected to Quincy Mall's amended claim and, on February 16, 2000, the bankruptcy court set the matter for trial during the week of May 15, 2000.

On February 7, 2000, unbeknownst to the bankruptcy court and during the pendency of the bankruptcy action, Quincy Mall filed a complaint for declaratory judgment against Parisian in Illinois state court, alleging anticipatory repudiation of the Letter Agreement and that Parisian refused to "compensate Quincy Mall for its lost rent and continues to refuse to compensate Quincy Mall for its losses occasioned by the foreclosure action of Bank One as Trustee." In its complaint, Quincy Mall sought a declaratory finding that Parisian is obligated to repay Quincy Mall "the $600,000 previously paid to Bank One." Then, on March 2, 2000, Quincy Mall sought to withdraw its pending amended proof of claim (eight years after its original proof of claim was filed) from the bankruptcy court.[6] Parisian objected, and, after briefing and oral argument, the bankruptcy court dismissed Quincy Mall's proof of claim with prejudice, holding:

> the objection of Parisian to each of the four claims as amended ... is sustained as though there had been a full adjudication, regardless of the theory of recovery, of each and every fact and issue, as well as the law, included in, referenced in, and/or related to each of the four claims as amended.... All damages, sums, and rights, ... which were requested ... are denied with prejudice and on the merits. This shall include, without limitation of any kind, the (a) $600,000 cash payment to Bank One by Quincy Mall; plus (b) Loss of specific rights in its fee valued to be at least $123,444.[7]

ment agreement with Bank One (which is not in the record on appeal), Parisian agreed that Bank One had an allowed unsecured claim of $1,573,444. Parisian further stated that it only paid $850,000 on this unsecured claim, leaving a balance of $723,444 (the total value given by Quincy Mall to Bank One).

6. Quincy Mall's motion to withdraw was not included in the record on appeal.

7. The bankruptcy court also soundly criticized Quincy Mall for forum shopping, stating, "[w]hen [Quincy Mall] decided that things may not be going completely its way on its remaining claims, shortly before the trial pertaining to the claims it decided to take its cookies and seek another picnic ground and try a state court forum in its back yard."

Meanwhile, back in state court, Parisian filed a notice of removal of Quincy Mall's complaint to federal court based on diversity jurisdiction. After successfully removing the action to federal court, Parisian filed a motion to dismiss the lawsuit, arguing that Quincy Mall's claims were barred by the doctrine of *res judicata*. The district court rejected Parisian's *res judicata* argument, concluding that Quincy Mall's state law claim was separate from its bankruptcy claim because that claim was based on Parisian's breach of the mortgage, whereas the federal district court action was based on an alleged breach of the Lease as modified by the Letter Agreement. Instead, the court concluded that because Quincy Mall was seeking the same damages in both actions, the bankruptcy court's order precluded it from attempting to prove damages in the federal case based on the doctrine of collateral estoppel. Accordingly, the district court dismissed the case. Quincy Mall appeals.

## II.

■ We review a district court's motion to dismiss under Rule 12(b)(6) *de novo*. *See Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir.2001). The district court concluded that collateral estoppel, also known as issue preclusion, barred Quincy Mall's breach of contract claim against Parisian. However, on appeal, Parisian urges us to affirm the district court on the basis of *res judicata*. We may affirm a district court based on any reason adequately supported by the record. *See Andersen v. Chrysler Corp.*, 99 F.3d 846, 855 n. 5 (7th Cir.1996). In reviewing a motion to dismiss, we may look to matters of public record outside the pleadings, including the public court documents filed in the bankruptcy proceedings. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994). Because we conclude that Quincy Mall's claim is barred by *res judi-*

*cata*, we begin and end our analysis with this finding.

■ *Res judicata*, also known as claim preclusion, prohibits parties from relitigating issues that were decided in a prior lawsuit, as well as any issues that *could have been* raised in the previous lawsuit. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). *Res judicata* bars a claim where there was a: "(1) judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir.1995). *See also Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir.1997).

■ We quickly resolve the first two requirements of this test. First, the parties to the complaint, Quincy Mall and Parisian, are the same parties involved in the disputed claim in bankruptcy court, and thus are identical for purposes of *res judicata*. Second, the bankruptcy court's order was a judgment on the merits because it dismissed Quincy Mall's claim "with prejudice and on the merits . . . as though there had been a full adjudication." A dismissal of an action with prejudice constitutes a final judgment on the merits barring a later suit on the same cause of action. *See Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir.1971).

■ Quincy Mall argues that because it voluntarily withdrew its amended proof of claim from the bankruptcy court, the bankruptcy court's order was akin to a consent judgment and thus did not constitute a "judgment on the merits." It is generally true, for purposes of applying collateral estoppel, that a consent judgment does not bar subsequent litigation of an issue unless the parties have expressed

an intent to foreclose such action. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987). This same principle, however, is not true in the *res judicata* context. For purposes of *res judicata*, a consent judgment does bar further litigation of the claim presented because it constitutes a "judgment on the merits." *See Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000)(noting that "consent agreements ordinarily are intended to preclude any further litigation on the *claim* presented but are not intended to preclude further litigation on any of the *issues* presented.") (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443, pp. 384–85 (1981)(emphasis added)). Thus, even assuming that the bankruptcy court order was in fact a consent judgment,[8] it constituted a judgment on the merits for purposes of *res judicata*.

■ We are therefore left to consider the third requirement of *res judicata* —the identity of the claims. Claims have identity for *res judicata* purposes if the second claim "emerges from the same 'core of operative facts' as [the] earlier action." *Brzostowski*, 49 F.3d at 339 (citation omitted). In other words, a claim is deemed to be identical to a previously litigated claim if the two claims are "based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir.1996); *Roboserve*, 121 F.3d at

1034. Thus, "once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir.1996)(quoting *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986)). However, "[t]raditional principles of preclusion allow additional litigation if some new wrong occurs." *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir.1992). Likewise, a party may assert a claim that "could not have been presented in the first case . . . ." *Id.*

■ Quincy Mall contends that these principles demonstrate that its state law breach of contract claim is distinct from the claim it had asserted before the bankruptcy court. According to Quincy Mall, the proof of claim it filed, and subsequently amended, in the bankruptcy court was based on Parisian's implied promise (under the mortgage) to indemnify Quincy Mall in the event that Parisian defaulted on its revenue bond payment, whereas its current lawsuit is based on Parisian's separate and later breach of contract under the Letter Agreement. Thus, Quincy argues that there are two separate and distinct causes of action and *res judicata* should not apply to bar its current claim. We disagree.

Quincy Mall's proof of claim in the bankruptcy action and its state law breach of contract claim are both based on the same core of operative facts, namely that Quincy

---

8. A consent judgment normally describes a judgment, "the provisions and terms of which are settled and agreed to by the parties to the action." Black's Law Dictionary 842 (6th ed. 1990). Here, there was no such voluntary agreement. Rather, Parisian vigorously objected to Quincy Mall's motion to withdraw the claim, likely suspecting that it was forum shopping. (At oral argument Quincy Mall's attorney candidly acknowledged that he was forum-shopping in order to get the best result for his client.) In ruling on the contested motion to withdraw, the bankruptcy court only agreed to allow Quincy Mall to withdraw its claim if the order also treated the claim as though it had been fully adjudicated on the merits. To the extent that Quincy Mall continued to voluntarily seek withdrawal given the conditions imposed by the bankruptcy court, it arguably constituted a consent judgment.

Mall suffered damages when Parisian defaulted on the revenue bond note, causing Bank One to file a foreclosure action in which Quincy Mall lost its rents and had to pay damages to Bank One. Quincy Mall's own characterization of the events giving rise to each of its claims demonstrates that these same facts control and that it was continually seeking to be paid for the very same injury. At the time Quincy Mall filed its original proof of claim, Parisian had defaulted on the note to Bank One. Thus, in that original proof of claim, Quincy Mall sought to cover its "future potential lost rents," foreseeing that those rents were in jeopardy, and specifically referring to the Lease to establish its rights to such damages. Likewise, in that proof of claim, Quincy Mall specifically referred to the financing agreement and to the mortgage securing the revenue bonds (noting that its fee interest was at stake). In its amended proof of claim, filed after the Letter Agreement had been "breached," Quincy Mall again referred to the Lease (now modified by the Letter Agreement, though not specifically referenced), the mortgage, the financing agreement and Parisian's default to Bank One. Quincy Mall characterized its amended proof of claim as one for "damages which might result from any action by Bank One to realize upon the mortgage upon Quincy Mall's real property." Quincy Mall no longer referred to "lost rents" (perhaps in contemplation of its "separate" action), but such lost rents (whether due to Quincy Mall under the original Lease or under the Letter Agreement) are clearly "damages" resulting from Bank One's foreclosure action. Bank One's foreclosure action triggered the re-direction of those rents to a receiver. Finally, in its federal district court complaint, Quincy Mall again recited these same factual circumstances, complaining once again that Parisian refused to compensate it for lost rent and for losses caused by Bank One's foreclosure action. The damages sought were specifically the "$600,000 previously paid to Bank One."[9]

Quincy Mall argues that since each claim (indemnity under mortgage or breach of contract) requires proof of different rights, duties and legal elements, that the claims are distinct. However, the test for identity of claims does not require "identity of legal theory or of facts . . . ." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). While the "legal elements of each claim may be different, [if] the central factual issues are identical," *Brzostowski*, 49 F.3d at 339, the claim is barred by *res judicata*. As noted, in both cases, Quincy Mall's claim is triggered by Parisian's default to Bank One: Bank One foreclosed on Quincy Mall's real property interest, and Quincy Mall had to pay damages to avoid a foreclosure. Whether that claim is characterized as an indemnification under the mortgage or a breach of the Letter Agreement, the transaction giving rise to Quincy Mall's injury is the same. Accordingly, we have no difficulty determining that these separate claims arise out of the same core of operative facts, that the central factual issues are identical, and that Quincy Mall's state law breach of contract claim is barred by *res judicata*.

■■■ Quincy Mall's contention that its present lawsuit is based on a new, post-confirmation breach of the Letter Agree-

---

9. The interrelatedness of these claims is further evidenced by the underlying documents upon which Quincy Mall relies. The Letter Agreement itself specifically refers to the mortgage by requiring payment of rents lost "as a result of a foreclosure or conveyance in lieu of foreclosure in all or any part of Quincy Mall's title to the Bergner's site *in connection with any mortgage or other financing obtained by Bergner's . . . .*" Likewise the mortgage, wherein Quincy Mall voluntarily placed its rights under the Lease in jeopardy, refers to the underlying Lease.

ment is unpersuasive. Quincy Mall argues that Parisian's refusal in 1995 to pay lost rent under the Letter Agreement (after the bankruptcy plan had been confirmed) constituted a new injury. However, as noted *res judicata* mandates that "once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Andersen*, 99 F.3d at 852. That is true regardless of the theory of recovery or the reliance on different documents to support the claim. In this case, the underlying transaction causing the injury was the same – Quincy Mall was damaged by Parisian's default on the revenue bond note to Bank One, because Bank One could then go after Quincy Mall's rights under the mortgage and receive the rents payable under the Lease. Quincy Mall's suit on the Letter Agreement was simply a different vehicle to be paid for the same wrong. Accordingly, we conclude that Quincy Mall's present claim fails to allege any new injury, and that its reliance on the Letter Agreement is akin to an alternative theory of recovery rather than a truly separate cause of action.

■ Moreover, Quincy Mall's characterization of its claim as a "post-confirmation" breach completely overlooks a significant point: all of the essential conduct complained of (including Parisian's refusal to pay lost rents under the Letter Agreement) occurred *before* the bankruptcy court issued its final order dismissing all of Quincy Mall's claims with prejudice on March 17, 2000. In its response to Parisian's reinstated objection, Quincy Mall actually raised Parisian's refusal to pay under the Letter Agreement by stating that "the effectiveness of that letter agreement is now in dispute." In addition, in its amended proof of claim, Quincy Mall also attempted to reserve or set aside any claims relating to the Letter Agreement, claiming that the bankruptcy court had no jurisdiction over the merits of such claims. Thus, these issues were already before the

bankruptcy court and, while they were not *technically* litigated, were disputed by Parisian and ultimately resolved by the bankruptcy court's order (with Quincy Mall's implicit agreement) dismissing the claim "as though there had been a full adjudication."

■ Quincy Mall's bold assertion that the bankruptcy court lacked the jurisdiction to enter an order disposing of its claim under the Letter Agreement and that therefore the claim remains viable has no foundation. The bankruptcy court has jurisdiction to consider whether something is properly part of the bankruptcy estate. In its final order, the bankruptcy court specifically dismissed with prejudice all of Quincy Mall's claims "regardless of the theory of recovery" and ruled against Quincy Mall on every issue of law and fact. Implicit in this ruling was a determination that, regardless of Quincy Mall's claim to the contrary, the bankruptcy court had jurisdiction to consider the merits of all of Quincy Mall's claims, including any asserted under the Letter Agreement, and that those claims were without merit. Even if the court's judgment was wrong, it still would have *res judicata* effect. *See Federated Dep't Stores, Inc.*, 452 U.S. at 398 ("the *res judicata* consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong...."). If a party receives an adverse judgment (as Quincy Mall did here), it must appeal that decision. This is what Quincy Mall should have done. Quincy Mall could have stayed in bankruptcy court through trial, with the bankruptcy court exercising jurisdiction over the claim (a decision Quincy Mall could have appealed), or the court might have declined to exercise jurisdiction, concluding that the claim was truly separate (in which case Quincy Mall would certainly have had a better argument in federal

district court). Quincy Mall did neither, and it is therefore precluded, pursuant to the doctrine of *res judicata*, from filing a second action to circumvent the undesirable results of the bankruptcy court's order.[10]

### III.

In conclusion, Quincy Mall's state law breach of contract claim involved the same core of operative facts as those set forth in the proof of claim it filed with the bankruptcy court. Quincy Mall obtained an eleventh hour voluntary dismissal from bankruptcy court on the eve of trial to avoid an adverse judgment by the bankruptcy court. It then filed the underlying civil action in an attempt to do an end-run around the bankruptcy court's order. This blatant forum shopping, admitted to at oral argument by Quincy Mall's counsel, will not be condoned, nor will such disrespect of bankruptcy proceedings be tolerated under the principles of *res judicata*. Accordingly, we affirm the judgment of the district court on these separate grounds.

---

**10.** We also note the enormous expense of judicial time and resources in bankruptcy court throughout this prolonged case. Quincy Mall's first proof of claim was filed in March 1992. Over seven years later, when Quincy Mall filed its amended proof of claim, the parties were still carrying on their dispute in bankruptcy court. Yet, it was not until the following year, with trial a mere two months away, that Quincy Mall sought leave to withdraw. Additionally, Parisian's alleged breach of the letter agreement occurred in 1995. However, Quincy Mall stayed in bankruptcy court for five more years before suddenly deciding to put its eggs in another basket by filing the present action in federal district court. Concern for the waste and misuse of precious judicial resources are at the heart of preclusion principles.